549 So.2d 902 (1989)
Robert JONES, Plaintiff-Appellant,
v.
Dr. Louis G. MES, et al., Defendants-Appellees.
No. 88-574.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
*903 Johnny E. Wellons, Baton Rouge, for plaintiff-appellant.
Durio, McGoffin & Wm. W. Stagg, Juneau, Judice, Marc W. Judice, Lafayette, Morrow & Morrow, Patrick C. Morrow, Opelousas, for defendants-appellees.
Before GUIDRY, LABORDE and KNOLL, JJ.
LABORDE, Judge.
This is an appeal from a granting of summary judgment in a medical malpractice case. On January 21, 1985, plaintiff, Robert Jones, filed a medical malpractice claim with the Commissioner of Insurance against Dr. Louis Mes, Dr. Robert Morrow, Dr. T.L. McNeely and Dr. Thomas Laborde. Pursuant to LSA-R.S. 40:1299.41, et seq., a Medical Review Panel was convened. In its opinion, dated June 30, 1986, the Medical Review Panel found that there was no breach in the standard of care with regard to the treatment provided the plaintiff by any of the physicians named in the claim, including the two defendants in this suit, Dr. Mes and Dr. Morrow.
Subsequent to the issuance of the Medical Review Panel's opinion, plaintiff filed suit in the 15th Judicial District Court, Parish of Lafayette. Named defendants in the suit were Dr. Mes, Dr. Morrow, Dr. McNeely, Dr. Laborde, and Ted Broussard d/b/a Crowley Physical Therapy Clinic.[1] Dr. Mes and Dr. Morrow filed motions for summary judgment, which motions were granted by the trial court on February 17, 1988. Plaintiff appeals the trial court's grant of summary judgment in favor of Dr. Mes and Dr. Morrow. We reverse the decision of the trial court and remand for further proceedings on the merits.

FACTS
On December 15, 1982, while in the course and scope of his employment with Supreme Rice Mills in Crowley, Louisiana, the plaintiff suffered a laceration to the dorsum of his right middle finger. Plaintiff initially sought medical treatment from Dr. T.L. McNeely, a general practitioner in Crowley. Dr. McNeely sutured plaintiff's injured finger and returned him to work. Since plaintiff continued to complain of pain, Dr. McNeely referred him to Dr. Louis Mes. Dr. Mes, a plastic surgeon, performed surgery on the plaintiff on April 7, 1983. The surgery consisted of the release of scar tissue around the tendon of the right middle finger and the separation of the tendon from the underlying bone. Plaintiff responded well to the surgery and Dr. Mes returned him to work on June 15, 1983, with no disability.
Approximately three weeks later, plaintiff returned to Dr. Mes's office complaining of pain in his right hand. Dr. Mes ordered a thermogram of the area, which was consistent with his diagnosis of developing sympathetic dystrophy in the right arm. He recommended a stellate ganglion block and the same was performed.
On August 26, 1983, plaintiff returned to Dr. Mes's office with diffuse swelling of his arm and forearm. Dr. Mes determined that this was due to compression of the median nerve at the carpal tunnel, and, with the plaintiff's consent, a carpal tunnel release was performed. After surgery, the arm was placed in a light splint with padding, wrapped by an ace bandage. Dr. Mes gave plaintiff directions on how to remove the splint for purposes of bathing. Plaintiff returned on September 20, 1983, for a follow-up visit, at which time Dr. Mes was astonished to find that his hand had swollen *904 three to four times its normal size and that fluid was oozing from the incision line. Dr. Mes asked plaintiff if he (the plaintiff) had been wrapping the ace bandage too tightly, which plaintiff emphatically denied. The doctor states that he instructed the plaintiff to discontinue wrapping his arm and recommended physical therapy to reduce the swelling.
When plaintiff returned to Dr. Mes's office on October 12, 1983, his entire arm was swollen from the mid-bicep to the fingertips. Dr. Mes could ascertain no logical explanation for the swelling and told plaintiff he suspected that he was wrapping something around his arm, which plaintiff again denied. Deciding that a second opinion was warranted, Dr. Mes referred him to Dr. Robert Morrow, an orthopedic surgeon. Plaintiff was discharged from Dr. Mes's care on November 9, 1983.
Plaintiff first visited Dr. Morrow's office on October 25, 1983. The examination revealed brawny edema of the right extremity beginning at the middle third of the arm. Dr. Morrow recommended that the patient be hospitalized and that his right arm be elevated in a cast. After initially refusing to undergo the recommended treatment, plaintiff finally consented, and he was placed in a padded shoulder spica body jacket, with his right arm in an abducted elevated position. Apparently, plaintiff called Dr. Morrow's office twice in the two weeks following the procedure, complaining of pain, and in response, Dr. Morrow prescribed pain pills. On January 27, 1984, a little more than a month after the cast had been applied, it was removed by Dr. Morrow. Dr. Morrow notes that plaintiff had trimmed the cast to allow for greater motion. Physical examination revealed that plaintiff did not have any edema of the right arm, although there was some edema of the right hand. On March 28, 1984, Dr. Morrow examined plaintiff and found that he had swan neck deformities in the fingers of his right hand. Determining that there was nothing more he could offer plaintiff, Dr. Morrow discharged him from his care on August 14, 1984.
Following his treatment by the two defendants, plaintiff was evaluated by several doctors, all of whom are more or less in agreement that plaintiff's right arm is now functionally useless. There is, however, disagreement as to the cause of the condition.
To explain the contracture and the limited mobility of plaintiff's arm, defendants rely heavily on the deposition testimony of Dr. Dean Louis, an orthopedic surgeon. Dr. Louis, who has never examined plaintiff, is of the opinion that plaintiff suffers from a factitial disease, which he defines as "a disease, which is something other than it appears to be, and it is a disease that is caused by the individual who presents it; self-induced illness, if you will." He further states that he agrees with the findings of Dr. Riordan[2] that plaintiff's arm is functionally useless as a result of it being held at a "particular attitude" and that the "x-rays revealed osteoporosis typical of disuse, not of sympathetic dystrophy."
Defendants additionally rely on the deposition testimony of Dr. Michael Teague, who was a member of the Medical Review Panel. Dr. Teague states that it is his opinion as well that the plaintiff suffers from a factitial disease. Like Dr. Louis, Dr. Teague has not had the occasion to examine the plaintiff.
Plaintiff, in his opposition to the motion, offers the affidavit of Dr. Louis Cenac, a psychiatrist who has examined plaintiff. Dr. Cenac states that plaintiff is not mentally capable of self-inflicting injury to his arm and that the condition of plaintiff's arm was not factitiously produced. Plaintiff also relies on the deposition testimony of Dr. Randall Lea, who also examined plaintiff and who is of the opinion that the plaintiff suffers from nerve damage to the nerves of the right extremity. Dr. Lea suggests that this could have been caused by the body cast, if it had been applied too tightly, or by improper use of the ace bandage. *905 Plaintiff, in his affidavit, states that he never unwrapped or rewrapped his arm with the ace bandage.

MOTION FOR SUMMARY JUDGMENT
Summary judgments are sparingly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966. LSA-C.C.P. art. 967 dictates that all supporting or opposing affidavits must be made on personal knowledge. Warden v. Southwest Louisiana Hospital Association, 300 So.2d 590 (La.App. 3d Cir.1974); Hidalgo v. General Fire & Casualty Co., 254 So.2d 493 (La.App. 3d Cir.1971). In the law of evidence, "personal knowledge" means something which the witness actually saw or heard, as distinguished from something he learned from another person or source. Hidalgo, supra. This personal knowledge requirement has been applied to deposition testimony as well. See Jackson v. Case, 522 So.2d 709 (La.App. 5th Cir. 1988); McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App. 2d Cir.), writ denied, 457 So.2d 1194 (La.1984). In the McCoy case, the court stated:
"That portion of an affidavit or deposition not based on personal knowledge should not be considered in deciding a motion for summary judgment. Statements in affidavits or depositions of the opinion or belief of an expert based on his special training and experience do not meet the requirement of personal knowledge. A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinion statements or testimony requires evaluation by the trier of fact as to probative value. A motion for summary judgment is not the proper vehicle for the trier of fact to evaluate evidence and determine the facts which are disputed."
Id. at 310.
Since neither Dr. Louis nor Dr. Teague ever examined the plaintiff, their opinions are not based on personal knowledge and, therefore, must be disregarded. Without their deposition testimony, there is clearly an issue of fact as to the cause of the plaintiff's condition. Even if we were to consider the doctors' testimony, there would still be an issue of material fact, as this testimony was directly contradicted by the affidavit of Dr. Cenac. Accordingly, we find that defendants have not met their burden of proving that there are no genuine issues of material fact in the case sub judice and are not entitled to summary judgment.
For the reasons assigned, we reverse the judgment of the trial court and the matter is remanded to the trial court for further proceedings on the merits. The costs of this appeal are taxed to the defendants; all other costs are to await final determination on the merits.
REVERSED AND REMANDED.
NOTES
[1] Dr. Laborde and Ted Broussard d/b/a Crowley Physical Therapy Clinic were dismissed from the suit and no appeal has been taken from the trial court's grant of summary judgment to Dr. T.L. McNeely.
[2] Dr. Riordan allegedly examined the plaintiff and disclosed his findings in a letter; however, we can find no evidence in the record of the examination, nor have we been able to find a copy of the letter.