609 So.2d 1084 (1992)
Marie HAYES, et vir, Plaintiffs-Appellants,
v.
The TRAVELERS INSURANCE COMPANY, Jack Eckerd Corporation and Glenn Kay, Defendants-Appellees.
No. 24,206-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
Writ Denied February 19, 1993.
Bernard Kramer, Alexandria, for plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by Julie Mobley Lafargue, Reginald W. Abrams, for defendants-appellees.
Before MARVIN, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The plaintiffs, Marie Hayes and her husband, George Hayes, appeal as insufficient *1085 the damages awarded them by the trial court judgment in their negligence action against the defendants, Jack Eckerd Corporation; Glenn Kay, an Eckerd employee; and The Travelers Insurance Company, Eckerd's liability insurer. Although it awarded Mrs. Hayes $5,804.02 in damages for the defendants' improper filling of a medication prescription, the trial court found that a fall by Mrs. Hayes, resulting in a broken hip, was not causally related to the negligent misfilling of the prescription and denied damages related thereto. We affirm.
Mrs. Hayes is a long-time sufferer of anxiety, depression, and agoraphobia. From 1980 to 1987, she was treated by Dr. Fred Price with Triavil, a combination of Trilafon (a neuroleptic) and Elavil (an antidepressant). The Trilafon caused Mrs. Hayes to experience tardive dyskinesia, a side effect of the neuroleptic aspect of the drug. Neuroleptic drugs can both cause tardive dyskinesia, but at the same time mask the symptoms thereof. Tardive dyskinesia is a disorder characterized by involuntary, distorted movements of the mouth, tongue, and facial musculature.
In 1987, Mrs. Hayes was referred to Dr. James Phillips, a psychiatrist. In place of the Triavil, Dr. Phillips treated Mrs. Hayes with Thorazine, a less potent neuroleptic, and Tofranil,[1] a tricyclic antidepressant which does not cause tardive dyskinesia. Mrs. Hayes was hospitalized twice for depression and anxiety, from September 2 to September 15, 1987, and again from March 23 to March 30, 1988. Both of these hospitalizations appear to have followed withdrawal from her neuroleptic medications, Trilafon and Thorazine. On January 11, 1989, Mrs. Hayes was found to have mildly abnormal liver function, a side effect of the use of Thorazine. The use of Thorazine was then discontinued. Five days thereafter, on January 16, 1989, Mrs. Hayes was again hospitalized for severe anxiety and depression, apparently caused by the withdrawal of Thorazine.
On January 23, 1989, Mrs. Hayes was discharged and given five prescriptions for medication by Dr. Phillips. Mrs. Hayes took the prescriptions to an Eckerd drugstore, where they were filled by a registered pharmacist. One prescription was for Tofranil, 75 milligrams daily. A second prescription was for L-Trytophan, but was erroneously filled for Tofranil, 50 milligrams, four times daily. Accordingly, instead of taking the prescribed 75 milligrams per day of Tofranil, Mrs. Hayes was actually taking 275 milligrams per day.
On February 1, 1989, Mrs. Hayes contacted Dr. Phillips on a semi-emergency basis with complaints of confusion, increased mouth movements, shaking, and body tremors. The erroneously filled prescription was then discovered. Dr. Phillips immediately discontinued the Tofranil medication. A blood test revealed a Tofranil level of 486, well above the recommended therapeutic range of 150 to 300. By February 6, Mrs. Hayes's Tofranil level had returned to 110.
On February 9, Dr. Phillips again saw Mrs. Hayes and restarted her on Tofranil. In addition, to control Mrs. Hayes's tremors, which Dr. Phillips described as parkinsonian, Dr. Phillips prescribed Artane. Artane, an anti-parkinsonian medication, is not recommended for patients with tardive dyskinesia as it may actually aggravate the symptoms of tardive dyskinesia.
On March 2, Mrs. Hayes, in a worsened condition, returned to Dr. Phillips, who replaced the administration of Artane with Cogentin, another anti-parkinsonian medication. Cogentin is likewise contraindicated in patients with tardive dyskinesia and also may aggravate its symptoms. Dr. Phillips prescribed 6 milligrams daily of Cogentin, the maximum recommended dosage, notwithstanding that it is recommended that Cogentin therapy be initiated at a low dose increasing by .5 milligram increments every five to six days until optimal results are obtained without excessive adverse reactions. Dr. Phillips stated that he prescribed the maximum dosage of Cogentin in order to "load" Mrs. Hayes's system to immediately stop the involuntary *1086 movements. Side effects of Cogentin include weakness, inability to move certain muscle groups, mental confusion and excitement, and hallucinations.
Mrs. Hayes's condition steadily worsened. Her tardive dyskinesia worsened; she was unable to wear her dentures due to her tongue movements, which were described as lizard-like. She became increasingly confused and dazed and suffered from hallucinations. On March 10, 1989, Mrs. Hayes fell and broke her hip, resulting in her hospitalization and hip replacement surgery. By the time of her discharge from the hospital on March 24, 1989, Mrs. Hayes's mental state and tardive dyskinesia were greatly improved.
Plaintiffs[2] filed the instant lawsuit claiming that the negligent misfilling of the prescription left Mrs. Hayes dazed, confused, and ultimately resulted in her fall and broken hip. Named as defendants were Glenn Kay, the pharmacist who filled the prescription, Jack Eckerd Corporation, which operated the Eckerd drugstore where the prescription was erroneously filled, and The Travelers Insurance Company, its liability insurer. The defendants admitted their liability in erroneously filling the prescription, but denied that such liability caused plaintiff's fall and her broken hip.
Following a bench trial, the trial court issued a written opinion in which it found that the erroneously filled prescription was not a cause of Mrs. Hayes's fall on March 10. The trial court noted that the defendants' liability would extend to any acts of Dr. Phillips which were in response to the Tofranil overdose. The trial court found that any effects of the overdose were gone by February 6, 1989, when Mrs. Hayes's Tofranil level had returned to within normal limits. The trial court specifically rejected Dr. Phillips's testimony that his treatment of Mrs. Hayes after February 6 was in response to the Tofranil overdose. The trial court noted that this testimony by Dr. Phillips was in contradiction to his own medical records. The trial court found most credible Dr. Paul D. Ware's testimony, based on his review of Dr. Phillips's medical records and accepted medical literature, that Mrs. Hayes's confusion and fall was likely caused by the Cogentin prescription and that such prescription was not in response to the Tofranil overdose of January 23. Accordingly, the trial court found that plaintiffs had failed in their burden of proving that Mrs. Hayes's fall of March 10 was related to defendants' negligence in misfilling the prescription on January 23. Nevertheless, a judgment was signed awarding Mrs. Hayes $5,804.02 for her damages resulting from the misfilling of the prescription, the damages the court concluded occurred before February 6, 1989.
The issue on appeal is whether Dr. Phillips's actions in prescribing Artane and, more particularly, Cogentin, which the trial court found to have been the cause of Mrs. Hayes's fall, was in response to the overdose of Tofranil caused by defendants' negligence in misfilling Mrs. Hayes's prescription on January 23, 1989.[3]
A tortfeasor may be liable not only for the injuries he directly causes the victim, but also for the victim's injuries caused by health care providers who seek to resolve the original harm. The risk of further injury from treatment, even negligent treatment, by health care providers whose services are necessitated by the original negligent act, is within the scope of the risk foreseeable by the original tortfeasor. Weber v. Charity Hospital of Louisiana at New Orleans, 475 So.2d 1047 (La.1985); Maxwell v. Soileau, 561 So.2d 1378 (La.App.2d Cir.1990), writs denied, 567 So.2d 1123, 1124 (La.1990).
The issue, essentially one of causation, is a fact question which should not be disturbed on appeal in the absence of manifest error. Marshall v. A & P Food *1087 Company of Tallulah, 587 So.2d 103 (La. App.2d Cir.1991); Estes v. Kroger Company, 556 So.2d 240 (La.App.2d Cir.1990), writ denied, 559 So.2d 1360 (La.1990). An appellate court may not set aside a finding of fact by a trial court in the absence of manifest error or unless it is clearly wrong. Accordingly, where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989). The rule that questions of credibility are left for the trier of fact applies as well to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Insurance Company, supra; Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990).
The evidence clearly supports the trial court finding that Mrs. Hayes's mental confusion and her fall on March 10 were caused by the Cogentin prescribed for her on March 2. This was the opinion of Dr. Ware, an expert in psychiatry and neurology, who stated that Mrs. Hayes's fall was the result of toxic delirium caused by Cogentin. Dr. Phillips acknowledged that the Physician's Desk Reference specifically precautions against the use of Cogentin in large doses because it may cause mental confusion and excitement.
Additionally, Cogentin may result in visual hallucinations and an intensification of mental symptoms in patients with preexisting mental disorders. Finally, Cogentin is not recommended for use in patients with tardive dyskinesia as it may aggravate that condition. Notwithstanding the recommended precaution that Cogentin should be administered in low dosages with incremental increases until optimal results are obtained, Dr. Phillips immediately prescribed the maximum recommended dosage for Mrs. Hayes. We note that all of the symptoms cautioned against manifested themselves in Mrs. Hayes before, on, and after the date of her fall on March 10. The use of maximum doses of Cogentin beginning March 2 would appear to have been the actual cause of Mrs. Hayes's fall on March 10. Plaintiffs concede as much.
The ultimate issue is whether, as asserted by plaintiffs, Dr. Phillips prescribed the Cogentin in response to the overdose of Tofranil. The trial court disagreed with plaintiffs' assertions and instead found that Dr. Phillips's prescribing of Cogentin was either an attempt to control Mrs. Hayes's tardive dyskinesia or in response to the related effects from the withdrawal of Thorazine. The trial court's conclusions are amply supported by the record.
Dr. Phillips testified that the overdose of Tofranil resulted in a Tofranil level of 486 on February 1, significantly above what he described as the toxic level of 300.[4] However, the record reveals that Mrs. Hayes had in the past also had Tofranil levels above what Dr. Phillips considered the toxic level. In August 1987, Mrs. Hayes had a Tofranil level of 371; a level of 432 on May 12, 1988; and a level of 399 on May 25, 1988. On none of these earlier occasions is there any evidence that Mrs. Hayes suffered from any of the extreme symptoms of mental confusion, hallucinations, or severe tardive dyskinesia which precipitated her March 10, 1989, fall. There is no indication that Dr. Phillips ever prescribed Artane or Cogentin on either of these earlier occasions. Rather, it appears Dr. Phillips simply discontinued or reduced Mrs. Hayes's use of Tofranil until her levels returned to within therapeutic ranges and then reinstituted the use of Tofranil.
The same response to an excessive Tofranil level appears to have been followed by Dr. Phillips after the January 23, 1989, overdose. He discontinued use of Tofranil, but by February 9, he had restarted Mrs. Hayes on Tofranil. It seems inconceivable that Dr. Phillips would again prescribe Tofranil for Mrs. Hayes on February 9 if she *1088 were still suffering the effects of the earlier overdose. Dr. Phillips's testimony that Mrs. Hayes was still suffering from the January 23 overdose when she fell on March 10 is simply inconsistent with his actions in prescribing Tofranil for Mrs. Hayes in the interim. Also rendered illogical in light of his represcribing Tofranil on February 9 is Dr. Phillips's attempt to explain that, although Mrs. Hayes's blood level of Tofranil had returned to 110 by February 6, the immeasurable level of Tofranil in her body tissue probably remained at a much higher level. Thus, Dr. Phillips's decision to restart Tofranil contradicts plaintiff's allegations that Dr. Phillips was still fighting the Tofranil overdose when he prescribed the maximum dosage of Cogentin on March 2.
We also note that Dr. Phillips's trial testimony is inconsistent with the medical records which he prepared concomitantly with his treatment of Mrs. Hayes. Contrary to his trial testimony that all of Mrs. Hayes's problems were related to the January 23 overdose of Tofranil, Dr. Phillips's medical records suggest that Dr. Phillips suspected Mrs. Hayes's increased tardive dyskinesia was attributable to the Thorazine withdrawal in January. Further, Dr. Phillips's medical records indicate that first the Artane and later the Cogentin were prescribed to help Mrs. Hayes cope with Thorazine withdrawal and to reduce her bodily movements.[5]
Dr. Phillips's explanation regarding the discrepancies between his medical records and his trial testimony does little to bolster the credibility of his testimony.[6] Dr. Phillips explained that his medical records were incomplete in order to protect Mrs. Hayes's confidentiality. However, the need for medical records to contain complete, accurate medical information would appear to outweigh any desire for a patient's privacy, at least with regard to clinical information such as a patient's reaction to medication, her confusion, mental state, and need for hospitalization.
The evidence suggests that the effects of the Tofranil overdose lasted only until February 6 when Mrs. Hayes's Tofranil level returned to 110, actually below the therapeutic level. Clearly, the fact that Dr. Phillips restarted Mrs. Hayes on Tofranil on February 9 indicates he felt that any adverse reaction to the Tofranil overdose had passed. Certainly, by that date, Dr. Phillips was no longer treating Mrs. Hayes for the Tofranil overdose. Rather, it appears the severe problems experienced by Mrs. Hayes originated with her withdrawal from Thorazine which apparently was the cause of her hospitalization from January 16 to 23, 1989. The withdrawal from Thorazine worsened Mrs. Hayes's tardive dyskinesia problems. The tardive dyskinesia movements or perhaps parkinsonian movements (as diagnosed by Dr. Phillips) were treated by Dr. Phillips with first Artane and then Cogentin. The Cogentin, at maximum dosage, in apparent disregard for the medication's dosage recommendation, rendered Mrs. Hayes mentally confused, dazed, and hallucinatory. The Cogentin, administered by Dr. Phillips in response to symptoms brought about by Thorazine withdrawal, and not in response to the overdose of Tofranil, was the causative factor in Mrs. Hayes's fall and broken hip.
In conclusion, we find sufficient support for the trial court's factual finding that Mrs. Hayes's mental confusion and her subsequent fall on March 10, 1989, was not causally related to the overdose of Tofranil occasioned by defendants' misfilling of her prescriptions on January 23. Accordingly, the trial court properly refused to impose liability for Mrs. Hayes's fall on defendants. The trial court judgment is hereby affirmed at plaintiffs' cost.
AFFIRMED.
NOTES
[1] Tofranil is also known as Imipramine.
[2] Mr. Hayes sought damages for loss of consortium.
[3] Plaintiffs have conceded that the trial court's rejection of their alternate theory that the residual effect of the Tofranil overdose itself directly caused Mrs. Hayes's mental confusion and the March 10 fall as posited by Dr. Phillips, was not clearly wrong.
[4] We note that the Mayo Clinic, as well as Dr. Ware, placed the toxic level of Tofranil at 500, not 300. Thus, according to the Mayo Clinic and Dr. Ware, Mrs. Hayes's 486 level was approaching, but not at the toxic level. Clearly, however, Mrs. Hayes's Tofranil level was significantly in excess of the maximum therapeutic level of 300.
[5] These bodily movements were either the spread of tardive dyskinesia to Mrs. Hayes's extremities, as Dr. Ware apparently would have diagnosed it or, as suspected by Dr. Phillips, the completely different, parkinsonian movements.
[6] Dr. Phillips's credibility must also be considered in light of a pending medical malpractice action brought against him for his actions in treating Mrs. Hayes.