679 So.2d 1004 (1996)
Barbara GUILLORY, Plaintiff-Appellant,
v.
DR. X and ABC Pharmacy, Defendants-Appellees.
Barbara GUILLORY, Plaintiff-Appellant,
v.
Dr. John Roy ANDRUS and Medicine Chest Pharmacy, Defendants-Appellees.
Nos. 96-85, 96-86.
Court of Appeal of Louisiana, Third Circuit.
August 28, 1996.
*1005 Lawrence N. Curtis, Lafayette, for Barbara Guillory.
Marc W. Judice, Lafayette, for Dr. John Roy Andrus.
John Edward Ortego, James T. McManus, Lafayette, for Medicine Chest Pharmacy.
Before WOODARD, PETERS and SULLIVAN, JJ.
*1006 SULLIVAN, Judge.
Barbara Guillory filed this medical malpractice suit, alleging that the negligence of Dr. John Roy Andrus and The Medicine Chest Pharmacy resulted in the suicide of her husband, Joseph Vernon Guillory. The trial court granted motions for summary judgment in favor of Dr. Andrus and Medicine Chest, and Mrs. Guillory has appealed. For the following reasons, we affirm.

Facts and Procedural History
On March 22, 1993, Joseph Vernon Guillory, 62, died from a self-inflicted gunshot wound. Earlier that day, Mr. Guillory had been treated by his long-time internist, Dr. Andrus, for symptoms of anxiety and depression, as well as an upper respiratory infection.
Dr. Andrus first saw Mr. Guillory on January 28, 1983, following hospitalization for chest pains. Thereafter, Dr. Andrus regularly treated Mr. Guillory or referred him to other physicians for numerous ailments, including anxiety and nervousness, respiratory infections, high blood pressure, back pain, allergic reactions to medications, aneurysms of both carotid arteries, and psychogenic impotence.
The first record of depression in Dr. Andrus' notes occurred in June of 1991, shortly after the death of Mr. Guillory's first wife. Dr. Andrus prescribed an anti-depressant, Pamelor. On Mr. Guillory's next office visit, he reported that he was much better and that he had discontinued his medication on his own. Thereafter, Mr. Guillory underwent several medical procedures performed by other physicians, including left and right carotid artery surgery, back surgery, and a penile implant for impotence. Dr. Andrus monitored Mr. Guillory's progress after each of these procedures.
On the date of his death, March 22, 1993, Mr. Guillory reported symptoms of depression to Dr. Andrus such as weight loss, poor sleep habits, and nervous tremors. Dr. Andrus prescribed Limbitrol, an anti-depressant that also treats nervousness, and recommended a follow-up visit in two months. Dr. Andrus testified that he vividly remembered Mr. Guillory that day. He stated that Mr. Guillory was not tearful and that the patient had a history of taking medications as prescribed.
Mrs. Barbara Guillory, the decedent's surviving spouse, testified that her husband had never spoken of suicide, but that something "definitely was wrong" with him in the days before his death. She believed that he was over-medicated, but other than Halcion, Xanax, prescribed for itching, and Lortab, prescribed for pain from surgery, she did not know what other medications he had been taking. She was also unaware of any physicians that may have treated her husband, other than Dr. Andrus and the surgeons who performed his back and carotid surgeries. To her knowledge, her husband had never been treated by any physician specifically for depression.
On March 22, 1994, Mrs. Guillory filed the instant suit against Dr. Andrus and Medicine Chest. Allegations against Dr. Andrus included that he was negligent in:
(1) administering medications in quantities and combinations that produced profound depression and suicidal thinking;
(2) failing to ascertain the types and amounts of medications prescribed by other physicians;
(3) prescribing medications that were contraindicated by the deceased's physical and mental condition and by other medications;
(4) failing to consult timely with and/or refer the deceased to other physicians;
(5) failing to heed the deceased's complaints and symptoms;
(6) failing to exercise due and reasonable care in treating the deceased; and
(7) failing to initiate timely treatment appropriate for the deceased's mental condition.
Allegations against Medicine Chest included:
(1) dispensing medications that produced profound depression and suicidal thinking;
(2) failing to apprise various physicians who were prescribing medication for Mr. Guillory of medications prescribed *1007 by other physicians, when the pharmacy knew that the deceased was receiving contraindicated medications;
(3) failing to inform the deceased that he was receiving contraindicated medications; and
(4) failing to inform the deceased of the potential side effects and contraindications of the medications that he was receiving.
The district court dismissed Mrs. Guillory's suit without prejudice on July 18, 1994, upon Dr. Andrus' exception that he was a qualified health care provider under La.R.S. 40:1299.41 et seq. Mrs. Guillory then presented her claim before a medical review panel, which, on May 3, 1995, rendered a unanimous opinion in favor of Dr. Andrus.
On June 28, 1995, Mrs. Guillory filed suit again in district court. After a status conference of July 26, 1995, the trial court issued a pre-trial order that, among other deadlines, ordered Mrs. Guillory to identify her expert witness(es) by August 23, 1995. On that deadline, however, Mrs. Guillory asked for an extension of time to name her experts, which request was denied by the trial court.
On September 11, 1995, Dr. Andrus filed his motion for summary judgment, attaching in support thereof the opinion of the medical review panel and the depositions of Dr. Andrus and Mrs. Guillory. On September 12, 1995, Mrs. Guillory announced her intention to apply for supervisory writs from the trial court's refusal to extend the expert witness deadline. In an unpublished writ of October 20, 1995, this court denied Mrs. Guillory's writ, finding no abuse of discretion in the trial court's ruling, but giving her an additional three days to exchange her expert information.
Neither the trial court nor this court stayed the proceedings during the pendency of the writ application. On October 3, 1995, the trial court heard Dr. Andrus' motion for summary judgment. At the hearing, the judge asked counsel for Mrs. Guillory to name the plaintiff's experts. Counsel stated that he had consulted with someone about the case but that he was not yet ready to name an expert because discovery with respect to Medicine Chest had not yet been conducted. The trial court then granted Dr. Andrus' motion, signing the written judgment on October 5, 1995.
On October 19, 1995, Medicine Chest also moved for summary judgment, which motion the trial court granted on November 9, 1995.

Summary Judgment
Appellate courts review summary judgment de novo, under the same criteria that govern the district court's consideration of whether summary judgment was proper. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991). In Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94); 639 So.2d 730, the supreme court outlined the procedural steps to be taken by the court in deciding a motion for summary judgment:
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P.Art. 966(B); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Vermilion, 397 So.2d at 493; Pace [v. Zilka], 484 So.2d [771] at 773 [(1986)].
If the court determines that the moving party has met this onerous burden, the *1008 burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Sanders, supra. LSA-C.C.P.Art. 967 outlines the non-moving party's burden of production as follows:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Id. at 752.
With these principles in mind, we now consider whether summary judgment was properly granted in favor of Dr. Andrus and Medicine Chest.

Dr. Andrus
Mrs. Guillory contends that the trial court improperly relied upon the opinion evidence of the medical review panel in granting Dr. Andrus' motion for summary judgment. She also argues that the trial court should not have granted summary judgment based upon her failure to name an expert witness because (1) the record does not unequivocally show that she is unable to produce an expert at trial and (2) from the record, it is not clear that expert testimony will be necessary for her to prevail at trial.
In Jones v. Mes, 549 So.2d 902 (La.App. 3 Cir.1989), relying upon McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App. 2 Cir.), writ denied, 457 So.2d 1194 (La.1984), this circuit held that the opinions of the experts of a medical review panel or of those who have not examined the plaintiff are not based upon "personal knowledge" and, therefore, should be disregarded for the purposes of summary judgment.
However, more recent jurisprudence has upheld summary judgments based upon expert opinion, where expert testimony is necessary to decide the case and where the opinion evidence offered in support of summary judgment is unchallenged. In Richoux v. Tulane Medical Center, 617 So.2d 13 (La. App. 4 Cir.1993), relying on Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4 Cir.1987), the fourth circuit upheld summary judgment in favor of a doctor and a hospital, upon the defendants' production of the favorable opinion of the medical review panel, the deposition of a member of the panel, and the plaintiff's answer to interrogatories in which she stated that the only experts she intended to call were the members of the panel. The judgment in favor of defendants was affirmed, despite the plaintiff's affidavit wherein she stated that she had found a specialist who would testify that defendants breached the applicable standard of care. After defendants filed their motion, the plaintiff also amended her answers to interrogatories to name an expert and attempted to schedule the deposition of the expert. The court recognized that under La.Code Civ.P. art. 966, a defendant may file a motion for summary judgment "at any time" and that "as a practical matter, the only requirement is that the parties be given a fair opportunity to present their claim." Id. at p. 17.
In Venable v. Dr. "X" and Dr. "Y," 95-1634 (La.App. 3 Cir. 4/3/96); 671 So.2d 1249, this court recently applied the rationale of Richoux to a factual scenario similar to the instant case. The plaintiff in Venable sued her obstetrician, alleging that he breached the standard of care in his specialty by allowing her to become chemically dependent upon the medication, Centrax. The physician moved for summary judgment supported by the opinion of the medical review panel, an affidavit of a panel member, and the plaintiff's answers to interrogatories in which she stated that she planned to call no expert witnesses at trial. This court affirmed summary judgment in favor of the physician, finding that in opposing the motion the plaintiff merely rested upon the allegations of her petition, which were insufficient to create a genuine issue of material fact.
In Pfiffner v. Correa, 94-0924 (La. 10/17/94); 643 So.2d 1228, the supreme court recognized that expert testimony as to standard of care, breach, and causation is not always necessary in a medical malpractice case, if a lay jury can infer negligence from the facts. Examples of such cases, in which a physician commits an obviously careless *1009 act, include fracturing a leg during an examination, amputating the wrong limb, dropping a knife, scalpel, or acid on a patient, leaving a sponge in a patient's body, failing to attend a patient when the circumstances demonstrate the serious consequences of the failure, failing to respond to an emergency when an on-call physician knows his presence is necessary, and the negligent violation of a statute and/or a hospital's bylaws.
This court's affirmation of summary judgment in Venable, 671 So.2d 1249, necessarily implies that Mrs. Venable was required to produce expert testimony to support her claim that her physician negligently permitted her to become addicted to a certain drug. Similarly, the resolution of the instant case requires knowledge of the properties of certain medications as well as the appropriate response of a physician presented with a patient with Mr. Guillory's symptoms. We find that these subjects are beyond the expertise of laymen and that Mrs. Guillory could not prevail at trial without expert testimony.
We now turn to the question of whether Mrs. Guillory was given a fair opportunity to present her claim as required by Richoux, 617 So.2d 13, and the jurisprudence cited therein. The record reveals that Mrs. Guillory filed her initial petition over one year before Dr. Andrus filed his motion. Although the original suit was dismissed without prejudice while the case was before the medical review panel, Mrs. Guillory's second petition contained substantially the same allegations as the first. During discovery, Mrs. Guillory not only "missed" the expert cut off date, but she also failed to respond timely to interrogatories after she had been granted one extension. At the hearing on Dr. Andrus' motion, the trial court gave plaintiff's counsel another opportunity to name an expert witness, but counsel declined to do so at that time.
In ruling on Dr. Andrus' motion, the trial court had before it (1) the opinion of the medical review panel favorable to Dr. Andrus, (2) Dr. Andrus' deposition in which he stated that Mr. Guillory was not suicidal at his last office visit, and (3) Mrs. Guillory's deposition in which she stated that her husband never spoke of suicide to her and that to her knowledge her husband was never treated by any physician specifically for depression. The papers supporting Dr. Andrus' motion clearly shifted the burden to Mrs. Guillory to show a genuine issue for trial. Fortenberry, 503 So.2d 596.
Although Mrs. Guillory's writ application was pending before this court when the trial court granted Dr. Andrus' motion, she was nonetheless required to oppose the motion, in the absence of a stay order from the trial court or this court. This court ultimately found the trial court did not err in refusing to extend the expert cut off date, but we gave the plaintiff three days from our ruling (through October 23, 1995) to exchange her expert information. The list that Mrs. Guillory eventually filed in the record contains the name of an expert in "pharmacology, pharmacy, nutrition and alcohol" and an expert in psychiatry, but not one in Dr. Andrus' specialty, internal medicine. We find that Mrs. Guillory has failed to present any evidence demonstrating that material factual issues remain. The trial court's decision to grant summary judgment in favor of Dr. Andrus is supported by the entirety of the record.

Medicine Chest
Mrs. Guillory next argues that summary judgment was improperly granted in favor of Medicine Chest because (1) the affidavits and support thereof were legally insufficient, and (2) the trial court committed legal error in concluding that Medicine Chest and its pharmacists had no duty to warn her husband of the side effects and/or contraindications of his medications.
In Kinney v. Hutchinson, 449 So.2d 696, 698 (La.App. 5 Cir.), writ not considered, 452 So.2d 170 (La.1984), the court recognized that a "paucity of jurisprudence" exists concerning a pharmacist's duty to his customer. In Gassen v. East Jefferson Hospital, 628 So.2d 256 (La.App. 5 Cir.1993), the court conducted an exhaustive review of jurisprudence in this and other jurisdictions from which the following principles are gleaned.
*1010 A pharmacist has a duty to fill a prescription correctly and to warn the patient or to notify the prescribing physician of an excessive dosage or of obvious inadequacies on the face of the prescription which create a substantial risk of harm to the patient. Hayes v. Travelers Ins. Co., 609 So.2d 1084 (La.App. 2 Cir.1992), writ denied, 613 So.2d 975 (La.1993); Hendricks v. Charity Hospital of New Orleans, 519 So.2d 163 (La. App. 4 Cir.1987). "The pharmacist does not, however, have a duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer's package insert." Gassen, 628 So.2d at 259, quoting McKee v. American Home Products Corp., 113 Wash.2d 701, 782 P.2d 1045, 1055-56 (1989).
In support of its motion, Medicine Chest offered the deposition of Mrs. Guillory and affidavits from three of its pharmacists. Gary Soileau, a pharmacist and chief stockholder of Medicine Chest, stated in his affidavit that he reviewed all of Mr. Guillory's prescriptions for approximately one year before his death, that no prescription contained an obvious error on its face, and that he cross checked the prescriptions through a computer program that indicated none were contraindicated. Two other pharmacists executed similar affidavits.
We agree with Mrs. Guillory that the trial court should not have considered these affidavits. Although the affiants stated that their information was based upon prescription records kept in the regular course of the pharmacy's business, those records were not submitted with the affidavits. The affidavits should have been disregarded because they did not comply with the requirement of La. Code Civ.P. art. 967 that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." See Federal Savings & Loan Ins. Corp. v. Edwards, 562 So.2d 1148 (La.App. 4 Cir.1990).
Disregarding these affidavits, we nonetheless find that the trial court correctly granted summary judgment. Mrs. Guillory has not alleged that any prescriptions contained excessive dosages or obvious errors or that a Medicine Chest pharmacist incorrectly filled a prescription. She filed suit alleging that Medicine Chest dispensed medications in quantities or combinations that produced suicidal thoughts and that Medicine Chest failed to warn her husband or his physicians of contraindicated drugs being prescribed by other physicians. Yet, in her deposition, Mrs. Guillory testified that she did not know what drugs her husband was taking other than Xanax, Halcion, and Lortab or what doctors were treating her husband other than Dr. Andrus and the two surgeons. With this deposition offered in support of Medicine Chest's motion, Mrs. GuillorUy was again required, by affidavits or otherwise, to set forth specific facts showing that a genuine issue exists for trial.
Mrs. Guillory argues that facts supporting her position are not in the record because adequate discovery was not completed before the summary judgment was rendered. La.Code.Civ.P. art. 967 provides that the court may refuse to grant the motion or order a continuance to permit additional discovery, if it appears for reasons stated that a party opposing the motion cannot present by affidavit facts essential to justify his opposition. When we consider the length of time between the initial filing of suit and the granting of this summary judgment, we cannot conclude the trial court erred in refusing to allow additional discovery. Mrs. Guillory had ample time to gather some evidence that supported the allegations of her petition.

DECREE
For the above reasons, the summary judgments granted in favor of Dr. John Roy Andrus and the Medicine Chest Pharmacy are affirmed at appellant's cost.
AFFIRMED.
WOODARD, J., dissents.