h MURRAY, Judge.
Charles L. Morris appeals a summary judgment dismissing his medical malpractice suit based upon Dr. Gamal Ghoniem’s alleged failure to obtain informed consent.[1] We reverse and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
In September 1990, Dr. Ghoniem, a urologist, performed a needle biopsy of Mr. Morris’ prostate at Tulane Medical Center. Within days of this procedure, Mr. Morris suffered a severe recurrent infection that allegedly disabled him until March 1992. Mr. Morris asserts that he was not adequately informed that such an infection might result, and that if he had known of this possibility, he would have rejected the biopsy or at least postponed it until he received the results of a blood test.
^Following a medical review panel proceeding, Mr. Morris filed this suit against Dr. Ghoniem and Tulane in January 1993. In his petition, Mr. Morris admitted signing a consent form prior to the' biopsy, but alleged that he had neither been given time to read it nor received an oral explanation of its contents. Although he alleged that he was unaware multiple tissue samples would be taken, which purportedly increased the risk of infection, Mr. Morris did not assert any negligence in the performance of the procedure.
Dr. Ghoniem and Tulane answered and moved for a summary judgment of dismissal in June 1994. In support of their motion they asserted that their evidence established that Mr. Morris had, in fact, been fully informed of all material risks in advance of the biopsy, including the risk of infection. They *725 also asserted that the 1993 medical literature showed that the risk of infection with the procedure was between one and two percent, and argued that the “typical” patient would have consented to the procedure even if informed of this insignificant risk. In opposition to the motion, Mr. Morris presented evidence to contradict Dr. Ghoniem’s claim that the procedure and attendant risks had been fully discussed. He also argued that the proper test was not whether a “typical” patient would have consented to the procedure, but whether “a reasonable person in the plaintiffs position” would find the particular risk significant. The defendants filed a supplemental memorandum, and the matter was submitted for decision based upon the pleadings and evidence in the record. On December 21,1994, the trial court denied the motion without reasons.
Shortly after the defendants’ motion had been rejected, trial was continued from January 5 to September 18, 1995. The September trial date also was continued after a flurry of last-minute competing motions by the parties concerning lathe admissibility of various witnesses and evidence. At a conference held October 11, 1995, a new trial date of May 13, 1996 was set, and a detailed scheduling order was entered. While this order required all dispositive motions and exceptions to be filed by December 15, 1995, the parties had until January 15, 1996 to employ and disclose their expert witnesses and until April 13 to complete discovery.
On December 8, 1995, the defendants filed a second summary judgment motion “on the grounds that plaintiff does not plan to offer expert urology testimony to establish the applicable standard of care.”[2] Mr. Morris filed a one-paragraph opposition, arguing that because the identical motion had been denied in 1994 and no new evidence was being offered, the defendants were not entitled to summary judgment. He attached and incorporated his earlier opposition and evidence by reference, and submitted the deposition of an infectious disease specialist. Dr. Ghoniem and Tulane responded with a supplemental memorandum in support of their motion, emphasizing that it would be a waste of time and expense “[t]o postpone deciding that plaintiff has no claim [until] after he puts on his case without an expert.” [Emphasis in original.]
Following oral argument on the motion, the trial court rendered the judgment at issue on February 28, 1996, dismissing Mr. Morris’ suit with prejudice. No written reasons were assigned. Plaintiffs timely motion for a new trial was argued on April 26 and denied by written judgment entered on May 15,1996. This appeal followed.
UDISCUSSION
At the time this matter was decided in the trial court, Article 966 B of the Code of Civil Procedure specified only that a motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show -that there is no. genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” However, Article 966 has been amended twice during the pendency of this appeal, and now also provides in pertinent part:
A. (2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, ... The procedure is favored and shall be construed to accomplish these ends.
* sfc * * * *
C. (1) After adequate discovery or after a case is set'for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the *726 motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
As amended by 1996 La. Acts, 1st Ex.Sess., No. 9 § 1, effective May 1,1996, and by 1997 La. Acts, No. 483 § 1, effective July 1, 1997.
An appellate court reviews a summary judgment de novo. Smith v. Our Lady of the Lake Hospital, 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. Whether we apply the standard in effect at the time the motion was considered below or that suggested by the newly amended language of Article 966, the mispleadings and evidence in this record do not ■support the defendants’ assertion that Mr. Morris cannot prove all essential elements of his claim without the testimony of a urologist other than Dr. Ghoniem.
In order to prevail on a claim that a health care provider failed to adequately disclose the risks of a procedure, a plaintiff must show:
(1) The existence of a material risk unknown to the patient;
(2) A failure to disclose the risk on the part of the physician;
(3) That disclosure of the risk would have led a reasonable patient in plaintiffs position to reject the medical procedure or choose a different course of treatment; and
(4) Injury.
Smith v. Lincoln General Hospital, 27,133, p. 8 (La.App.2d Cir. 6/21/95), 658 So.2d 256, 263, writ denied, 95-1808 (La.10/27/95), 662 So.2d 3. In their motion for summary judgment, Dr. Ghoniem and Tulane contend that without offering his own expert urologist, Mr. Morris will not be able to carry his burden of proof on either element (1) or (3).
With regard to the first element, Mr. Morris agrees with the defense that, as the Supreme Court stated in Hondroulis v. Schuhmacher, 553 So.2d 398, 412 (La.1988) (on rehearing), “ ‘Some’ expert testimony” will be required “to define the existence and nature of the risk and the likelihood of its occurrence.” He contends that Dr. Gho-niem’s testimony will satisfy his burden of proof at trial on this issue, as demonstrated by certain of the doctor’s deposition statements.
In response to this argument, the defendants first assert that Dr. Ghoniem’s testimony should not be considered in this appeal because neither the evidence nor the argument concerning its use was submitted on the motion for summary judgment, but only on the motion for new trial. We reject this assertion' for two treasons: first, because the doctor’s statements relied upon are found on the deposition pages submitted in opposition to the first summary judgment, and incorporated by reference on this subsequent motion; and second, because our de novo review requires that this court “render any judgment which is just, legal, and proper upon the record on appeal.” La.Code Civ. Proe. Ann. art. 2164; Georgia Gulf Corp. v. Bd. of Ethics for Public Employees, 96-1907, p. 6 (La.5/9/97), 694 So.2d 173, 176. Therefore, the fact that plaintiffs counsel did not explicitly advance this argument in his opposition to the summary judgment does not preclude our consideration of the issue.
Defendants argue alternatively that, even if considered, Dr. Ghoniem’s deposition testimony is not sufficient to establish all necessary aspects of the materiality determination. This argument must fail, however, because it ignores the fact that such detailed evidence is necessary to defeat summary judgment only if the defendants’ documents establish a prima facie case that their motion should be granted. Hayes v. Autin, 96-287, p. 6 (La.App, 3d Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.[3] As most recently amended, Arti *727 cle 966 C(2) still requires the movant to establish “an absence of factual support for” at least one essential element of the plaintiffs claim. In this case, while the defendants have “pointed out” that Mr. Morris plans to rely upon Dr. Ghoniem’s testimony in proving his claim at trial, the evidence submitted on this motion does not establish that the defendant doctor’s testimony will be insufficient to carry the plaintiffs evidentiary burden.
17During the pendency of these proceedings, there have been only five pages from Dr. Ghoniem’s deposition provided to the trial court and made a part of the record. The testimony contained on those pages is quoted in full as follows:
Q: You also testified in your deposition that you advised Mr. Morris of the risk of possible infection as a result of the biopsy procedure?
A: (Nods affirmatively)
Q: What is the percentage of risk of infection in that procedure?
A: Infection can be just urinary infection or serious infection. I would say about 10 percent or less would suffer from urinary infection after this procedure.
Q: Ten percent or less would suffer from urinary infection?
A: Infection, yeah. And less would be from serious infection.
Q: Do you have any—
A: No, I don’t have a percentage for him.
Q: Are you aware of any studies?
A: I cannot quote it just off the top of my head.
Q: Would you estimate that the percentage for serious infection would be above 2 to 3 percent?
A: Around that figure.
Q: The ultrasound procedure that was performed on Mr. Morris, was that performed in the same room as the needle biopsy was performed?
A: Yes, sir.
Q: So there aren’t two different suites?
A: No.
Q: What type of equipment is used for the ultrasound?
A: We have the — I’m blank now. I can give you the exact model number with just a phone call. It’s the same one which we’re using now.
Q: How long have you been using that? A: ■ Since ’89,1 guess.
Q: Have there been any replacements or improvements on the
Deposition pages 5-6.
there was a note if it was abnormal to see his physician.
Q: Okay. All right, go ahead. .
IgA: And if the digital rectal examination is abnormal, then the physician discusses that with the patient and tells him that this is abnormal and needs further investigation. And it’s up to the patient to decide if he wants to have his original physician, his general practitioner, his urologist or local urologist to further investigate that.
Q: Now, in the records that you reviewed, did you find anything that was sent to Mr. Morris indicating that he had an abnormal DRE, of that you, in fact, were the physician who administered—
A: Yes, I told him that his rectal examination is abnormal and he needs further evaluation. And I gave him the option of having, I asked him if he has urologist [sic] or not, and that is a procedure we do all the time.
Deposition page 26.
procedure and risks involved, and also telling hirri that if he doesn’t have the procedure here he should see somebody else to have it, then he is sent to the nurse that would go over the procedure again and give him a sheet of instructions, before and after procedure what to do, and schedule him.
Q: And that would all be done that day?
A: Yes.
Q: Now, insofar as the actual biopsies, they will be performed on another day?
*728 A: Yes.
Q: And how was that scheduled, if you know?
A: That is what I was just telling, after we send the patient—
Q: The nurse would then schedule it?
A: The nurse, she would schedule him, and she would also give him the instruction sheet for what to do before and what to do after the procedure.
Q: Okay. Explain to me exactly what risks you informed Mr. Morris about at this time, and this would be on the date of the original screening, correct?
A: Yes.
Q: Following your DRE?
A: As well as the day of the biopsy.
Q: Okay. Well, .let’s not jump ahead. Let’s stay just on the date of the DRE.
A: The risks of the procedure, I usually summarize it -in .three risks: Bleeding, which can happen both in the urine or from the rectum; and infection. Also, I inform them that sometimes bleeding can extend to the seminal vesicle and cause the ejaculate to look brownish, and that might persist for a few weeks.
Q: Now, this was the information that you gave him on the date of the DRE?
A: Yes, sir.
Deposition pages 34-35..
lain addition to these deposition excerpts, the only additional evidence that would be relevant to a materiality determination were two medical journal articles. Although one of these articles, published in 1993, discusses the rate of complications from prostatie needle biopsy, it is does not establish that Mr. Morris’ procedure presented a risk of infection that was similar in nature and frequency to the unstated “complications” noted in the study.
Considering this evidence as a whole, a reasonable factfinder could conclude that the likelihood of, or the harm threatened by, an infection resulting from a prostatic needle biopsy was great enough to constitute a significant medical risk. Dr. Ghoniem’s testimony establishes that a “serious” infection occurs in about two to three percent of patients, but it is unknown what he considers to be a “serious” infection. As the Supreme Court pointed out, “[i]f the harm threatened is great, the risk may be significant even though the statistical possibility of its taking effect is very small.” Hondroulis, 553 So.2d at 412. Although the law now favors summary judgment, it does not permit this court to assume that Dr. Ghoniem’s trial testimony will be that even a “serious” infection presents no significant threat. Because the defendants have offered no medical evidence suggesting that infection was not a known risk of this procedure or that the harm that would result if the risk was realized was minor, it has not been established that Mr. Morris will require the testimony of a urologist other than Dr. Ghoniem “to define the existence and nature of the risk and the likelihood of its occurrence,” id. Therefore, we cannot find “an absence of factual support” for the materiality element of plaintiffs cause of action, as required by Article 966.
Turning to the third element of this claim, causation, the defendants argue that expert testimony is required to prove that a reasonable patient in Mr. Morris’ | ipposition would have rejected the procedure or chosen another course of action had the risk of infection been disclosed. The defendants contend that Mr. Morris cannot prevail on this element without expert testimony because Dr. Gho-niem will not testify that he breached any duty, and because the excerpt of the doctor’s deposition testimony does not include any discussion of the factors needed to determine what a reasonable patient would decide under like circumstances. Again, we find that the defendants have not borne their burden of production on this issue.
The only evidence submitted in support of this motion that appears relevant to deciding whether a reasonable patient in Mr. Morris’ position would have consented to this procedure, despite a material risk of infection, is the medical review panel’s written reasons for their decision: “This panel finds that the procedure performed is one that the typical patient would agree to undergo in spite of the potential risk of infection.” Relying on Richoux v. Tulane Medical Center, 617 So.2d 13 (La.App. 4th Cir.1993) and *729 Guillory v. Dr. X, 96-85 (La.App. 3d Cir. 8/28/96), 679 So.2d 1004, the defendants contend that presentation of the panel opinion is sufficient to shift the burden of production onto Mr. Morris. We find that defendants’ reliance on these cases is misplaced. While both of the cited cases state that the panel opinion is admissible evidence, in neither ease was summary judgment granted based solely upon that document. Instead, the opinion in each cited case made reference to the additional deposition testimony of experts expressing the opinion that the defendant(s) had not breached the standard of Incare.[4] Because such additional evidence is lacking here, these eases are clearly distinguishable.
Furthermore, although the defendants assert in their memoranda and briefs that Dr. Ghoniem’s trial testimony will be in full harmony with the medical review panel opinion on this issue, the meager excerpts of his deposition thus far submitted are insufficient to support this argument. His testimony on page 35 of the deposition, previously quoted, suggests that Dr. Ghoniem merely provides his patients with a broad outline of potential risks, without regard to any individualized circumstances. In view of the doctor’s admission that two to three percent of patients may suffer a “serious” infection from this procedure, the mere fact that the “typical” patient agrees to undergo the biopsy even though “an” infection may result does not establish that a reasonable patient in the plaintiffs position would have consented if informed of the risk of “serious” infection and the nature of such harm. Thus, the trier of fact could find that Dr. Ghoniem’s testimony, if in accord with his deposition, supports Mr. Morris’ allegation that any reasonable person would have rejected or postponed the biopsy if fully informed of the risk of infection. Therefore, Dr. Ghoniem and Tulane have not established that the plaintiff has no factual support for this element of his claim.
CONCLUSION
Mr. Morris has alleged that if the material risk of infection from this prostate biopsy had been adequately explained, any reasonable person in his position would have waited for the results of a blood test before consenting to the procedure. After plaintiffs counsel decided that he could rely upon the defendant-! i2doctor’s testimony to prove his case at trial, the defendants moved for summary judgment arguing that Dr. Ghoniem’s testimony would not establish those facts necessary for Mr. Morris to prevail. However, because the limited portions of Dr. Gho-niem’s deposition offered in support of the motion suggest that “serious infection” could be considered a “significant” risk of the procedure at issue, Dr. Ghoniem and Tulane have not established that no triable issues of fact remain and that they are entitled to judgment as a matter of law. Accordingly, the judgment below is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
KLEES, J., dissents.

. Although appellant's counsel makes his appearance in this court on behalf of “Mr. and Mrs. Charles Morris,” plaintiff's wife is not included as a plaintiff in the original petition for damages. Neither record in the consolidated cases contains an amending petition establishing her addition as a party, although there is a February 1996 proof of service of a "Supplemental and Amending Petition” on the defendants. We cannot assume, however, that this unanswered pleading added “Mrs. Morris” as a party to this action.

. Although plaintiff still had more than a month to select an expert at the time the motion was filed, nothing in the record suggests he made any attempt to do so. Compare, e.g., Guillory v. Dr. X, 96-85, pp. 8-9 (La.App. 3d Cir. 8/28/96), 679 So.2d 1004, 1009 (trial court provided several opportunities for plaintiff to name experts, but even when granted additional time, by appellate court’s exercise of supervisory jurisdiction, she failed to name an expert in the defendant-doctor’s field and thus could not defeat properly supported summary judgment).

. This case was referenced by the 1997 Legislature as an indication of its intent to clarify the *727 1996 amendment of Article 966 by enacting the more recent version of the statute. 1997 La. Acts, No. 483 § 4.

. Significantly, the Richowc court contrasted the evidence presented on the summary judgment at issue with that offered in support of an earlier motion which was denied. The only evidence offered in support of the earlier motion was the panel opinion and evidence that the plaintiff’s only experts would be the panel members.