h Judge DENNIS R. BAGNERIS, SR.
Plaintiff Charles Morris appeals, for the second time, a summary judgment dismissing his medical malpractice suit based upon defendant Dr. Gamal Ghoniem’s alleged failure to obtain informed consent. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

In In Re Medical Review Panel of Morris,[1] this court previously set forth the facts and procedural history of this case as follows:
In September 1990, Dr. Ghoniem, an urologist, performed a needle biopsy of Mr. Morris’ prostate at Tulane Medical Center. Within days of this procedure, Mr. Morris suffered a severe recurrent infection that allegedly disabled him until March 1992. Mr. Morris asserts that he was not adequately informed that such an infection might result, and that if he had known of this possibility, he would have rejected the biopsy or at least postponed it until he received the results of a blood test.
Following a medical review panel proceeding, Mr. Morris filed this suit against Dr. Ghoniem and Tulane in January 1993. In his petition, Mr. Morris admitted signing a consent form prior to the biopsy, but alleged that he had neither been given time to read it nor 12i"eceived an oral explanation of its contents. Although he alleged that he was unaware multiple tissue samples would be taken, which purportedly increased the risk of infection, Mr. Morris did not assert any negligence in the performance of the procedure.
Dr. Ghoniem and Tulane answered and moved for a summary judgment of dismissal in June 1994. In support of their motion they asserted that then-evidence established that Mr. Morris had, in fact, been fully informed of all material risks in advance of the biopsy, including the risk of infection. They *1001 also asserted that the 1993 medical literature showed that the risk of infection with the procedure was between one and two percent, and argued that the “typical” patient would have consented to the procedure even if informed of this insignificant risk. In opposition to the motion, Mr. Morris presented evidence to contradict Dr. Ghoniem’s claim that the procedure and attendant risks had been fully discussed. He also argues that the proper test was not whether a “typical” patient would have consented to the procedure, but whether “a reasonable person in the plaintiffs position” would find the particular risk significant. The defendants filed a supplemental memorandum, and the matter was submitted for decision based upon the pleadings and evidence in the record. On December 21, 1994, the trial court denied the motion without reasons.
Shortly after the defendants’ motion had been rejected, trial was continued from January 5 to September 18, 1995. The September trial date also was continued after a flurry of last-minute competing motions by the parties concerning the admissibility of various witnesses and evidence. At a conference held October 11, 1995, a new trial date of May 13, 1996 was set, and a detailed scheduling order was entered. While this order required all dispositive motions and exceptions to be filed by December 15, 1995, the parties had until January 15, 1996 to employ and disclose their expert witnesses and until April 13 to complete discovery.
On December 8, 1995, the defendants filed a second summary [¿judgment motion “on the grounds that plaintiff does not plan to offer expert urology testimony to establish the applicable standard of care.” Mr. Morris filed a one-paragraph opposition, arguing that because the identical motion had been denied in 1994 and no new evidence was being offered, the defendants were not entitled to summary judgment. He attached and incorporated his earlier opposition and evidence by reference, and submitted the deposition of an infectious disease specialist. Dr. Ghoniem and Tulane responded with a supplemental memorandum in support of their motion, emphasizing that it would be a waste of time and expense “[t]o postpone deciding that plaintiff has no claim [until] after he puts on his case without an expert.” [Emphasis in original.]
Following oral argument on the motion, the trial court rendered the judgment at issue on February 28, 1996, dismissing Mr. Morris’ suit with prejudice. No written reasons were assigned. Plaintiffs timely motion for a new trial was argued on April 26 and denied by written judgment entered on May 15, 1996. This appeal followed.
On November 12, 1997, this court reversed and remanded the trial court’s granting of summary judgment in favor of defendant.[2] Specifically, this court found that: (1) defendants failed to establish that the plaintiff had “no factual support”, as required by Article 966, to prove the materiality element of an informed consent case; and (2) the defendants failed to shift the burden of proof regarding the causation element by merely relying on an opinion of the Medical Review Panel.[3]
*1002 On June 9, 1998, the defendants filed a third summary judgment motion on the grounds that Dr. Nathan Fischman’s deposition, taken in response to this Rcourt’s November 12, 1997 decision, “solidifies the [medical] panel opinion and supports defendants’ position on the lack of causation in this case.” In opposition to the motion, Mr. Morris argues that Dr. Fischman’s deposition is irrelevant because the proper test is what someone in Mr. Morris’ exact position would have done had he known of the risk of serious infection from the prostate biopsy. He attached his affidavit and deposition in opposition to the third summary, and adopted the memorandum and exhibits previously filed in opposition to the two prior motions.
Following oral argument on the motion, the trial court rendered the judgment at issue on October 28, 1998, dismissing Mr. Morris’ suit with prejudice. Written reasons were assigned. Plaintiffs timely motion for a new trial was denied on October 28,1998. This appeal followed.

DISCUSSION

On appeal, summary judgments are reviewed de novo. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. Id. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party’s claim. If the opposing party cannot produce any evidence to suggest that he will be able to meet his evi-dentiary burden at trial, no genuine issues of material fact exist.
A fact is material if it is essential to a plaintiffs cause of action under the | ¡^applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or detennine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir. 12/15/92).
The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La .Code Civ.P. art. 966(A)(2). However, a motion for summary judgment is not appropriate, generally, for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, knowledge. Jefferson Parish School Bd. v. Rowley Co., Inc., 305 So.2d 658, 663 (La.App. 4 Cir. 12/30/74); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1 Cir. 3/9/70).
Jurisprudence holds that an executed consent form presents a rebuttable presumption of informed consent. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988). This presumption of informed consent may be rebutted by proving the following:
1) There is a material risk which the physician has a duty to disclose.
2) The physician failed to inform the patient about a material risk.
3) The material risk was realized.
4) There is a causal connection between the failure to inform the patient of the risk and realization of the risk.

Id.

The issue before us is whether there is any genuine issue of material fact as to whether Mr. Morris can meet the causation element as required by Hon- *1003 droulis. For the following reasons, we agree with the trial court that Mr. Morris failed to establish the causation element to his informed consent claim and that summary judgment was appropriate to dismiss his claim against Dr. Ghoniem and Tulane.
| A plaintiff bringing an informed consent negligence action must prove a causal connection between the physician’s failure to inform and the subsequent injury. Hondroulis 553 So.2d at 412. His proof of causation must include two elements: demonstration that his injury resulted from an unrevealed risk that should have been disclosed to him, and that he would not have consented to the operation or treatment if he had known of the risks. Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447, 454. Further, courts apply an objective test to determine whether a particular patient would have consented to the treatment had he been adequately informed of the risk and alternatives. Id. As stated by the Supreme Court in Hondroulis, 553 So.2d at 412:
Because of the likelihood of a patient’s bias in testifying in hindsight on this hypothetical matter, this court and others have adopted an objective standard of causation: whether a reasonable patient in plaintiffs position would have consented to the treatment or procedure had the material information or risks been disclosed.
Thus, the objective standard does not depend on the plaintiffs self-serving testimony as to what he would have decided if all of the material risks had been disclosed.
In this case, defendants offered the Medical Review Panel decision and Dr. Fisehman’s deposition to establish that a reasonable person in Mr. Morris’ position would have undergone this procedure despite the risk of infection. The Medical Review Panel, in its written reasons for decision, stated “that the procedure performed is one that the typical patient would agree to undergo in spite of the potential risk of infection.” Dr. Fisch-man’s testimony is quoted, in part, as follows:
Q. Would a reasonable person in Mr. Morris’ condition agree to undergo a prostate biopsy even knowing of the potential, the less than one percent potential, of a serious infection?
|7A. What is meant by the term “reasonable”?
Q. Reasonable would be your understanding of the term reasonable.
A. Yes. I would think that a man 57 years old that has a familial risk of cancer and the press now that’s available on the familial incidence of prostate cancer and the fact that somebody is 57 years of age with an abnormal examination, yes, I think that a person, a reasonable person 57 years of age, would consent to a prostate biopsy.
Q. In your 15 years of practice, have you ever had a patient refuse to undergo a biopsy because of the risk of infection?
A. No.
[[Image here]]
Q.Did Dr. Ghoniem have a duty to find out about Mr. Morris’ business venture and his personal life and anything and everything that might factor into his decision in having this biopsy?
A. I think that the physician has to appreciate the need — when something abnormal is found, you know, the first thing the physician has to address is something abnormal was found, and then I think the next appropriate step was, you know, something was found, how was it to be addressed, and the question is did the plaintiff have a malignancy in his prostate, and I think that Dr. Ghoniem then proceeded appropri *1004 ately to recommend a biopsy and an ultrasound.
Q. In assessing a patient’s condition prior to performing a biopsy or recommending a biopsy, do you inquire into a patient’s current business ventures or what’s going on in their personal life in the absence of them offering details of that?
A. I usually just tell the patient, you know, you need to have a biopsy, and then we try to agree on a mutual date where we can then do it.
[[Image here]]
Q. If Dr. Ghoniem did not make such an inquiry in this case, would you find he acted within the standard of care?
A. Yes.
Q. The allegation in this case, Doctor, is that Mr. Morris was in the middle of a business venture and that in that position he would not have gone through with this procedure knowing of the likelihood of the risk. What duty did Dr. Ghoniem have, if any, to appreciate Mr. Morris’ business venture or the personal things that were going on in [Shis life in terms of notifying him of the procedure and the risk and that kind of thing? Do you understand the question?
A. No.
Thus, both the Medical Review Panel and Dr. Fischman are of the opinion that a typical patient would undergo the prostate biopsy even knowing of the risk of infection. Mr. Morris has no expert to counter Dr. Fischman’s testimony or the Medical Review Panel decision.
Mr. Morris’ argument alleges that he does not need an expert because a jury can decide whether a reasonable person in Mr. Morris’ position would have undergone the prostate biopsy. However, we agree with the trial court that in making this argument, “the plaintiffs confuse the elements of Hondroulis.” As correctly stated in the trial court’s reasons for judgment,
[defendants did not dispute and the Court agrees that it is theoretically up to the jury whether a reasonable person in patient’s position would attach significance to a particular risk. That is part of the inquiry as to whether the risk allegedly not communicated is material. However, the issue presented by defendants’ motion is not whether the risk was material but whether, assuming it was, plaintiff would have undergone the prostate biopsy anyway. If plaintiffs cannot establish causation, an essential element to their informed consent claim, they have no claim.
Again, causation is an objective test and we agree with the trial court that the issue is “what a reasonable person in plaintiffs position, as determined by the Court, would do, not what the plaintiff says he would have done.” The defendants supporting evidence establishes that a reasonable person in Mr. Morris’ position would have undergone the prostate biopsy despite the risk of infection, and that Dr. Ghoniem had no duty to inquire into Mr. Morris’ business ventures and his personal life. Mr. Morris has no expert to dispute this testimony. Accordingly, the summary judgment is affirmed, and Mr. Morris’ suit against Dr. Ghoniem and |9Tulane is dismissed with prejudice.

AFFIRMED.

McKAY, J., dissents.

. 96-1771 (La.App. 4 Cir. 11/12/97), 703 So.2d 723 writ granted in part, judgment amended by 98-0119 (La.3/20/98), 715 So.2d 1197.

. In Re Medical Review Panel of Morris, 96-1771 (La.App. 4 Cir. 11/12/97), 703 So.2d 723.

. In its written reasons for decision, the Medical Review Panel stated "that the procedure performed is one that the typical patient would agree to undergo in spite of the potential risk of infection.”